JOHN MAYO, PLAINTIFF-APPELLANT, v. CITY NATIONAL BANK AND TRUST COMPANY, DEFENDANT-RESPONDENT.

Argued March 3, 1970—Decided May 18, 1970.

112

Mr. *Kent A. Losche* argued the cause for the appellant (*Messrs. Losche & Losche,* attorneys).

Mr. *David R. Rudd* argued the cause for the respondent (*Messrs. Raff, Scheider & Rudd,* attorneys).

The opinion of the Court was delivered by

HANEMAN, J. This matter involves the question of the order of precedence of various creditors of an owner-builder to payment out of an installment of a construction mortgage.

On May 10, 1966, The City National Bank and Trust Company of Hackensack (City National Bank) signed a "Mortgage Commitment and Closing Instruction Sheet" agreeing to advance $750,000 to Fairleigh Arms, Inc. (Fair-

leigh) in unspecified installments, the repayment of which was to be secured by a "Construction Mortgage." Said Commitment reads in part: "Subject to the conditions as stated in a Permanent Commitment by Manhattan Savings Bank, dated December 14, 1965." The Permanent Commitment of the Manhattan Savings Bank above referred to reads in part:

"The loan shall be * * * secured by a first mortgage on the above premises * * * which mortgage shall constitute a valid first lien on a good and marketable title in unencumbered fee simple to the premises and building and improvements now or hereafter erected thereon and all fixtures, equipment and articles of personal property now or hereafter affixed to or used in connection with the operation of the premises.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"The mortgage shall be superior to any mechanic's lien which may be filed for construction of the building and proof satisfactory to our counsel that the cost of construction of the building has been paid in full shall be submitted at or prior to the closing."

On May 11, 1966, Fairleigh executed and delivered a mortgage in the face amount of $750,000 to City National Bank. Although the mortgage recites that $750,000 had been "in hand well and truly paid by the Mortgagee at or before the sealing and delivery of these presences", a legend appearing on the top of page one, indicates that it is a "Construction Mortgage" printed by "Irwin Karkus, Law Blank Publisher, Newark, N. J.' ' No place in the body of the instrument is there any finite specification of the time for and amount of future installments. This fact is adverted to, not because it affects the merits of the matter but because it is explanatory of why this Court as well as the trial court, encountered some difficulty in ascertaining the facts. In order that there be no misunderstanding, no such written statements are required to make a valid Construction Mortgage. However, as a matter of propriety and safety this should be done. *Bell v. Fleming's Executors,* 12 *N. J. Eq.* 13 (*Ch.* 1858), aff'd 12 *N. J. Eq.* 490 (*E. & A.* 1859); *Reed v. Rochford,* 62 *N. J. Eq.* 186 (*Ch.* 1901). Such

statements are helpful in resolving the parties' respective rights and duties. All parties agree that the loan was upon a Construction Mortgage and that advances were to be made by the mortgagee under some oral arrangement subject to the conditions contained in the above mentioned instruments.

On August 22, 1966, Fairleigh executed an assignment to plaintiff of which defendant had notice and which reads:

"For and in consideration of the sum of ONE ($1.00) DOLLAR, and other good and valuable consideration, receipt which is hereby acknowledged, the undersigned hereby assigns to
JOHN MAYO
205 West Madison Avenue
Dumont, New Jersey
the sum of FIVE THOUSAND ($5,000.00) DOLLARS out of the fifth mortgage payment advance to be made by City National Bank & Trust Company on Mortgage made by Fairleigh Arms, Inc., to City National Bank & Trust Company, on property situate on Anderson Street, Hackensack, New Jersey.

Said City National Bank & Trust Company is hereby authorized and directed to pay the aforesaid sum of $5,000.00 to JOHN MAYO, out of the said fifth mortgage payment."

On September 7, 1966, Fairleigh executed and delivered to Cooper-Horowitz, Inc. (Cooper-Horowitz) a mortgage in the amount of $50,000 which was duly recorded on September 8, 1966. Said mortgage contained the following provision:

"Subject to a certain mortgage from Fairleigh Arms, Inc. to The City National Bank & Trust Company of Hackensack dated May 11, 1966 recorded May 13, 1966 in Book 4413 of mortgages at page 249 in the amount of $750,000.00 of which $607,500.00 has been advanced.

"It is a condition of this mortgage that the mortgagor, its successors and assigns pay to the mortgagee, its successors and assigns, the future advances made by The City National Bank and Trust Company of Hackensack pursuant to the aforementioned mortgage unless the debt secured by this mortgage and interest thereon is fully paid."

On September 16, 1966, P. Germinario and Sons, Inc., duly recorded a Mechanic's Notice of Intention. *N. J. S. A.* 2A:44–71.

On November 14, 1966, City National Bank made a fifth advance in the total amount of $78,500 none of which was paid to Fairleigh or plaintiff. Payments were made to said bank in payment of two interim notes and interest and to its attorney for legal services. In addition $45,000 was paid to Germinario and $5,575 was paid to Cooper-Horowitz. Plaintiff does not contest the validity of the payments to the bank and its attorney but asserts that he had a right to the payment of $5,000 by virtue of the above referred to assignment which he alleges was prior to the rights to payment of either Germinario or Cooper-Horowitz.

The Chancery Division entered judgment approving the payments as made, 103 *N. J. Super.* 227, which judgment was affirmed by the Appellate Division, 107 *N. J. Super.* 43. This Court granted certification, 55 *N. J.* 77 (1969).

Several additional facts should be noted before a discussion of the primary issue. Fairleigh, the owner of the realty, was its own contractor for the erection of the building here involved and sub-contracted the various phases of construction. There was no independent prime contractor and, of course, no filed building contract. On November 14, 1966, there was due Germinario for plastering work, $100,000. At the same time there were also a number of other contractors who had filed notices of intention and performed work on the construction for which money was owing. The draw of November 14, 1966 took two days of conferences to accomplish. Although the record unsatisfactorily furnishes no detail of the conferences and final agreement between the mortgagees and those who had filed notices of intention, it is implicit in the record and the exhibits, including the "Closing Statement", that it was agreed that Germinario and Cooper-Horowitz should receive the sums paid to them in exchange for a release, postponement or subordination of the balance of their respective liens and that the other mechanic's lien notice of intention creditors also agreed to re-

lease, postpone or subordinate their respective lien claims to the lien of the City National Bank mortgage.

It must be recognized at the outset that the assignment to plaintiff, whether outright or as collateral security, can rise no higher than Fairleigh's entitlement to payment out of the fifth installment. It follows that if Fairleigh, itself, was not entitled to any such payment, plaintiff in turn was not entitled to receive any funds from the fifth draw. *Abeles v. Adams Engineering Co., Inc.*, 64 *N. J. Super.* 167, 187 (*App. Div.* 1960) modified 35 *N. J.* 411 (1961); *Allen B. Du Mont Labs, Inc. v. Marcalus Mfg. Co.*, 30 *N. J.* 290, 298 (1959). Accordingly, we must determine Fairleigh's right to personally receive funds out of the fifth draw.

City National Bank was obliged to advance future funds only if it would receive a "first lien on a good and marketable title in unencumbered fee simple to the premises and building and improvements" to the extent of the funds so advanced. Also, even though probably unnecessary, it was further specifically provided that the lien of the City National Bank mortgage would be superior for each advance to any mechanic's lien. It was, therefore, Fairleigh's duty to furnish City National Bank with a first lien and plaintiff's assignment was subject to the performance of that duty.

On November 14, 1966, City National Bank had a first lien to the extent of $607,500, the money actually advanced to that date and not for the face amount of the mortgage. *Grennon v. Kramer*, 111 *N. J. Eq.* 337 (*E. & A.* 1932). Where it is optional with the mortgagee whether to make future advances, he does not have a prior lien for those advances made after notice of an existing encumbrance. *Germania Building & Loan Ass'n v. B. Fraenkel Realty Co.*, 82 *N. J. Eq.* 49 (*Ch.* 1913), aff'd 84 *N. J. Eq.* 164, 199 (*E. & A.* 1914). Here, City National Bank had knowledge of the Germinario notice of intention, the Cooper-Horowitz second mortgage and the other filed notices of intention prior to making the advance on November 14, 1966. At that posture

City National Bank could not have obtained a first lien for any additional funds to be advanced on that day unless the liens of the filed notice of intention creditors and the second mortgagee were satisfied, subordinated or postponed to the bank's lien for such an additional advance.

█ In addition, for City National Bank to become entitled to a priority over the mechanic's liens, the bank was required to comply with *N. J. S. A.* 2A:44–89 which reads as far as here pertinent:

"The priority given by section 2A:44–87 [for mortgages] of this title shall also exist when the mortgage secured or the funds secured thereby have been applied:

\*    \*    \*    \*    \*    \*    \*    \*

"e. To the payment to every person, or his legal representative, assignee, receiver or trustee, who shall have furnished labor or material for the building for money due therefor at the time of any advance and who shall have filed, or in whose behalf there shall have been filed a 'mechanic's notice of intention,' as required by this article. All such claimants shall be entitled to participate in each advance made under the mortgage, except when made for payments under paragraphs 'a' to 'd,' inclusive, of this section, unless such person shall have:

"1. Subordinated, released, partially released or postponed his right of payment or lien to the lien of the mortgage, but no postponement shall be effective for the purposes of this article, except for the first payment made in reliance thereon and any preceding payments which may have been made;

\*    \*    \*    \*    \*    \*    \*    \*

"The mortgagee may, if the amount being advanced is not sufficient to pay in full all claimants having a right to participate therein, pay to each such claimant such proportionate amount of his claim as the total amount being advanced bears to the total of the claims of all entitled to participate. All liens or rights of liens conferred by this article shall be subordinate to the mortgage to the extent of the payments so made; \* \* \*."

The terms of this statute are as much a part of the City National Bank-Fairleigh agreement as if recited therein in full. See *Saffore v. Atlantic Casualty Ins. Co.*, 21 *N. J.* 300, 310 (1956); *Deerhurst Estates v. Meadow Homes, Inc.*, 64 *N. J. Super.* 134, 152 (*App. Div.* 1960); *Gibraltar Factors Corp. v. Slapo*, 41 *N. J. Super.* 381, 384 (*App. Div.* 1956),

aff'd 23 *N. J.* 459 (1957), app. dismissed 355 *U. S.* 13, 78 *S. Ct.* 44, 2 *L. Ed.* 2d 20 (1957) ; *Fidelity, etc., Co. v. Hill Constr. Co.,* 11 *N. J. Misc.* 58, 61 (*Co. Dist. Ct.* 1933). So Fairleigh had by implication agreed to permit the City National Bank to distribute in accordance therewith. Plaintiff as assignee of Fairleigh is similarly bound.

■ Although, as above noted, the testimony is sparse, it can reasonably be concluded that Cooper-Horowitz and the mechanic's lien claimants, including Germinario, agreed to postpone the priority of their respective liens which exceeded the amount of the advance, waive any further claim, statutory or otherwise, to participation in the advance, and authorize the payment above stated to Germinario and Cooper-Horowitz.

The payment to precedent lien holders in order to provide City National Bank with a first lien for its fifth advance, exhausted the funds available for distribution. It follows that Fairleigh did not qualify for any payment. As Fairleigh, the assignor, was not entitled to participation in the fifth advance, plaintiff, its assignee, was also not entitled to any such participation.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.